UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NADIA YOUKELSONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:10-cv-01705 (RWR) |
| ) | |
| FEDERAL NATIONAL MORTGAGE ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT FEDERAL NATIONAL MORTGAGE ASSOCIATION'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Federal National Mortgage Association (hereinafter "Fannie Mae"), by its undersigned counsel, submits this Statement of Points and Authorities in support of its Motion to Dismiss the Complaint filed by Plaintiff, Nadia Youkelsone.

**I.   ALLEGED FACTS**[1]

On October 5, 2010, Plaintiff, a New York attorney acting *pro se*, filed the Complaint, which asserts numerous statutory and common law claims against Fannie Mae arising out of a foreclosure action that Fannie Mae commenced against her in September 2001, which was ultimately resolved in 2004 by sale of Plaintiff's Property.

On March 3, 1997, Plaintiff executed the Note and mortgage on property located at 2644 East 118th Street, Brooklyn, NY (the "Property") with GFI Mortgage. See Compl. ¶ 7. On the same day, the Note was assigned from GFI to Fleet Mortgage Corporation. See id. at ¶ 8. In

---

[1] For purposes of this Motion, Fannie Mae accepts as true the factual allegations in Plaintiff's Complaint.  We note that at various times in Plaintiff's Complaint, Plaintiff refers to "Defendants." See e.g., Compl. ¶¶ 52, 53, 55-58; 60-61, 68, 76, 78-81, 96, 98, 109, 113, 139, 141, 151, 157-158, and 160-161.  For purposes of this Motion, we construe Plaintiff's references to "Defendants" to be references to both Fannie Mae and non-party WAMU, which Plaintiff repeatedly references in her Complaint.

May, 2001, the Note and mortgage were assigned to Washington Mutual Home Loans ("WAMU"), which later assigned the Note and mortgage to Fannie Mae in September 2001. See id. at ¶¶ 11,14. The assignment to Fannie Mae was recorded with the New York City Registry's office on November 15, 2001. See id. at ¶ 15-16.

In September 2001, Fannie Mae commenced a foreclosure action against the Property. See id. at ¶ 23. Throughout the foreclosure action and related litigations (including Plaintiff's bankruptcy petition which was ultimately dismissed in December 2003), Fannie Mae and WAMU, which continued to service the Note and mortgage along with Fannie Mae, continuously rejected Plaintiff's requests to allow her to sell the Property through a private sale and refused to return funds that Plaintiff had paid on the mortgage. See id. at ¶¶ 21-22, 26, 32, 40.

On February 5, 2004, Plaintiff entered into a workout plan with Fannie Mae and WAMU, and provided Fannie Mae with all the required documents and information. See id. at ¶ 43. Fannie Mae made no decision on Plaintiff's application to cure default, and instead moved to foreclose on the Property. See id. at ¶¶ 44-45. Plaintiff later obtained Fannie Mae's permission to sell the Property to a third party for less than fair market value. See id. at ¶¶ 47-50.

On June 21 and 25, 2004, and at least five times thereafter, Plaintiff asked Fannie Mae and WAMU to provide the payoff statement and closing papers. See id. at ¶¶ 52, 54, 56. On June 30, 2004, Fannie Mae and WAMU demanded all sums due on the Note. See id. at ¶ 55.

On October 22, 2004, Fannie Mae and WAMU again moved to foreclose on the Property, scheduling an auction for November 18, 2004. See id. at ¶ 57. On October 24, 2004, Fannie Mae and WAMU provided Plaintiff with the payoff statement, which included late fees, attorneys' fees, finance charges, private mortgage insurance charges and other charges. See id.

at ¶¶ 60-61.  On its face, the Complaint alleges no conduct undertaken by Fannie Mae (or WAMU) after October 24, 2004.

Based on these allegations, Plaintiff filed this Complaint on October 5, 2010, asserting twelve counts against Fannie Mae:  (1) abuse of process; (2) breach of contract; (3) unjust enrichment; (4) bad faith; (5) conduct in violation of Section 1921(4) of the New York Real Property Actions and Proceedings Law (the "NY RPAPL"); (6) conduct in violation of Section 1639 of the Truth in Lending Act ("TILA"); (7) deceptive practices; (8) misrepresentation, fraud and deceit; (9) intentional infliction of emotional harm; (10) intentional interference with business relations; (11) economic duress; and (12) conduct in violation of 18 U.S.C. § 1961 ("civil RICO" or "RICO").  As discussed below, Plaintiff's Complaint raises numerous claims that are barred by the applicable statute of limitations, and is vague and conclusory in violation of the pleading standard articulated in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

## II.  STANDARD OF REVIEW

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint."  Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002); see also In re Estate Curseen, 890 A.2d 191, 194 (D.C. 2006).  In reviewing the complaint, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Chamberlain v. American Honda Finance Corp., 931 A.2d 1018, 1023 (D.C. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In Twombly, the Supreme Court clarified the standard for assessing whether a complaint can survive a Rule 12(b)(6) motion to dismiss and held that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  In abandoning the prior, more lenient standard, the Supreme Court in Twombly stated unequivocally that to survive a motion to

dismiss, the "[f]actual allegations [set forth in the Complaint] must be enough to raise a right to relief above the speculative level." Id. at 555.  In Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009), the Supreme Court clarified that the stringent Twombly standard applies to all civil cases.

A plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Lee v. United States, 570 F. Supp. 2d 142, 146 (D.D.C. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing them in plaintiffs' favor, the court finds that the plaintiffs have failed to allege all the material elements of their cause of action." Chamberlain, 931 A.2d at 1023 (quoting *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997)); see also Jordan Keyes & Jessamy, LLP  v. St. Paul Fire and Marine Ins. Co., 870 A.2d 58, 62 (D.C. 2005).  "On a motion to dismiss for failure to state a claim, if the allegations contained in the complaint, when taken as true, fail to state a claim for which relief may be granted, or otherwise establish that the complaint faces some insuperable bar to relief, the motion should be granted." Iacangelo v. Georgetown Univ., 580 F. Supp. 2d 111, 116 (D.D.C. 2008) (citing Franklin Asaph Ltd. P'ship v. FDIC, 794 F. Supp. 402, 404 (D.D.C. 1992)).

## III. ARGUMENT

### A. Plaintiff's Claims Are Time Barred

Plaintiff's TILA claim (Count Six) is subject to a one-year statute of limitations.  See 15 U.S.C § 1640(e). Plaintiff alleges that she executed the Note and mortgage on March 3, 1997, and Plaintiff alleges no acts by Fannie Mae after October 24, 2004.  See Compl. ¶¶ 7; 60. Plaintiff did not commence this action until October 5, 2010, more than 13 years after she

executed the Note and mortgage, and more than five years after the last act alleged in her Complaint. Thus, Plaintiff's claim for a TILA violation is time-barred and should be dismissed.

Plaintiff's civil RICO claim (Count Twelve) is subject to a four-year statute of limitations. Although no statute of limitations is explicitly set forth in the RICO statute, the Supreme Court has held that civil RICO claims are subject to a four-year statute of limitations. See Klehr v. A.O Smith Corp., 521 U.S. 179, 188-89 (1997). A civil RICO action accrues and the limitations period begins to run from the date that a plaintiff knew or should have known of her injury. See Rotella v. Wood, 528 U.S. 549, 554 (2000); In re Merrill Lynch Ltd. P'ships. Litig., 154 F.3d 56, 60 (2d Cir. 1998). Here, all of the activities that Plaintiff characterizes as constituting RICO violations occurred well before October 5, 2005 -- four years before Plaintiff filed this action -- thus predating the date when the period of limitations commenced. Accordingly, Plaintiff's RICO claim should be dismissed based on the statute of limitations.

The Plaintiff's other claims (Counts One through Five and Counts Seven through Eleven) are barred by the District of Columbia's ("D.C.") applicable three year statute of limitations. See D.C. Code § 12-301.[2] Under D.C.'s choice of law rules,[3] the question of whether an action is

---

[2] See also C&E Servs. v. Ashland, Inc., 498 F. Supp. 2d 242, 262 (D.D.C. 2007) (three-year state of limitations for fraud and negligent misrepresentation); King v. Kitchen Magic, Inc., 391 A.2d 1184, 1186 (D.C. 1978) (statute of limitations for claims sounding in fraud is three years); Habib v. Raytheon Co., 616 F.2d 1204 (D.C. Cir. 1980) (tortious interference claims governed by three year statute of limitations); Menna v. Plymouth Rock Assurance Corp., 2010 WL 183423, at *4 (D.C. Jan. 21, 2010) (three-year statute of limitations for breach of contract claims). Moreover, "The District of Columbia Code provides that the statutory period begins to run 'from the time the right to maintain the action accrues.'" Hancock v. Homeq Serv. Corp., No. 05-0307, 2007 WL 1238746, at *5 (D.D.C. Apr. 27, 2007) (citing D.C. Code § 12-301). Under D.C.'s "discovery rule," a cause of action accrues when a plaintiff knows or through the exercise of reasonable diligence, should know the existence of the injury and evidence of wrongdoing. District of Columbia v. Dunmore, 662 A.2d 1356, 1359 (D.C. 1995).

[3] D.C. law treats the statute of limitations as a procedural matter, and thus mandates application of D.C.'s statute of limitations. See Reeves v. Eli Lilly and Co., 368 F. Supp. 2d 11, 25-26

barred by the statute of limitations is a procedural matter that is governed by the statute of limitations of the forum. As a result, the District's statute of limitations applies to Plaintiff's remaining claims. Under D.C. law, none of the foregoing causes of action have a statute of limitations longer than three (3) years.

On its face, the Complaint reflects Plaintiff was aware of Defendants' purported improprieties as early as September, 2001, when Fannie Mae commenced foreclosure proceedings, and no later than October 4, 2004 when Fannie Mae and WAMU provided Plaintiff with the payoff statement that included the charges Plaintiff complains of. *See* Compl. at ¶¶ 42, 60-61. However, Plaintiff commenced this action in October, 2009. Even assuming that every alleged act occurred as late as in October, 2004 -- which is not alleged on the face of the Complaint -- Plaintiff's claims still violate D.C.'s three-year statute of limitations. Accordingly, the Court should dismiss these claims, with prejudice, as time-barred as a matter of law.

**B.  Plaintiff's Claims Also Fail Under *Twombly*[4]**

   **1.  Abuse of Process (Count One)**

---

(D.D.C. 2005); A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454, 1458 (D.C. Cir. 1995); Steorts v. American Airlines, Inc., 647 F.2d 194 (D.C. Cir. 1981). Also, Plaintiff has requested that the Court exercise supplemental jurisdiction over her state law claims, and as such, the statute of limitations of the District of Columbia applies. See Gaudreau v. Am. Promotional Events, Inc., 511 F. Supp. 2d 152, 157 (D.D.C. 2007) (when exercising supplemental jurisdiction under 28 U.S.C. § 1367(a), a Court "applies the forum state's choice-of-law rules and the state statute of limitations indicated thereby").

[4] Plaintiff asserts federal jurisdiction pursuant to 28 U.S.C. §§ 1331. See Compl. ¶ 1. "Resolution of all claims that arise under state law, whether brought in federal court or not, is controlled by the substantive law of the state that creates the cause of action." United States v. Pena, 731 F.2d 8, 12 (D.D.C. 1984); see also A.I. Trade Finance, Inc., 62 F.3d at 1458 ("[a] federal court sitting in diversity must apply state law to the substantive issues before it). Because the causes of action here arose from legal proceedings in New York, and from a mortgage executed in New York for real property located in New York, Plaintiff's state law claims are governed substantively by New York law. See Reeves, 368 F. Supp. 2d at 25 (indicating same and discussing "governmental interest" approach to conflict of laws issues).

Plaintiff fails to set forth sufficient allegations to sustain a cause of action for abuse of process. Plaintiff refers generally to the foreclosure action that Fannie Mae commenced against the Property, "related litigations" and Plaintiff's own chapter 13 bankruptcy proceeding, but offers only conclusory allegations about Fannie Mae's involvement in each of these proceedings. See Compl. ¶¶ 26, 27, 35-40, 77-83. In order to state a claim for abuse of process under New York law, where each of the foregoing cases were filed, a plaintiff must establish three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." Curiano v. Suozzi, 469 N.E.2d 1324 (N.Y. 1984). Plaintiff's Complaint fails to satisfy these requirements, as Plaintiff provides no factual support. See Singletary v. Dist. of Columbia, 2010 WL 547902, at *4 (D.D.C. Feb. 18, 2010) (to set forth grounds for entitlement to relief, a plaintiff "must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action"). As such, Plaintiff fails to sufficiently plead abuse of process.

### 2. Breach of Contract (Count Two)

As the basis for her breach of contract claim, Plaintiff alleges that Fannie Mae improperly collected, applied and retained mortgage payments and fees in violation of the Note and mortgage agreement. See Compl. ¶¶ 85-86. However, the pleading deficiencies in Plaintiff's breach of contract claim mirror her other claims. When pleading a breach of contract claim, a plaintiff may not allege mere conclusions of law. See Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("[s]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract"). Plaintiff fails to plead facts to support her conclusions that Fannie Mae's actions "constitute a breach of the contract." See Compl. ¶ 86. Plaintiff fails even to allege the contract terms that Fannie Mae allegedly breached. Plaintiff fails

to identify any amounts or fees that were improperly collected, applied or retained under the Note or mortgage. Here, Plaintiff's breach of contract claim is replete with legal conclusions and bereft of supporting facts, and should be dismissed for failure to state a claim.

### 3. Unjust Enrichment (Count Three)

Plaintiff's unjust enrichment claim fails because of the existence of a valid, enforceable contract, i.e., the Note and mortgage agreement that was assigned to Fannie Mae, which precludes recovery in quasi-contract, particularly where Plaintiff's unjust enrichment claim is duplicative of her breach of contract claim. See Waldman v. Escobar, 2009 WL 861068 *4 (S.D.N.Y. Mar. 27, 2009) (dismissing unjust enrichment claim where parties' relationship was defined in a written contract, the validity and enforcement of which was not in question); Eagle Comtronics, Inc. v. Pico Products, Inc., 256 A.D.2d. 1202, 1204 (N.Y. App. Div. 1998) (dismissing unjust enrichment claim as duplicative of breach of contract claim, and stating "[t]he existence of a valid and enforceable written contract governing a particular subject matter precludes recovery in quasi-contract or unjust enrichment for occurrences or transactions arising out of the same matter").

Here, Plaintiff's unjust enrichment claim is based on the allegation that Fannie Mae improperly collected, applied and retained mortgage payments and fees. See Compl. ¶¶ 95-97. However, the contractual rights and obligations of the parties, including Fannie Mae's rights with respect to collecting, applying and retaining mortgage payments, is governed by the Note and mortgage agreement. Plaintiff does not challenge the validity and enforcement of the Note or mortgage and, indeed, Plaintiff's breach of contract claim is premised on the validity and enforcement of both.

Moreover, to establish unjust enrichment, a plaintiff must "show the defendant's retention of the benefit would be unjust." Gidatex v. Campaniello Imports, Ltd., 49 F. Supp. 2d 298, 301 (S.D.N.Y. 1999). Plaintiff's bald assertion that "[a]n inequity will result if Defendant[ ] is not required to pay back the overpayment and misappropriated monies to Plaintiff" is insufficient under Twombly, and further justifies dismissal of Count Three. See Compl. ¶ 98.

### 4. Bad Faith (Count Four)

Plaintiff has failed to state a bad faith claim against Fannie Mae because there is no independent cause of action under New York law for the tort of bad faith. See Clarke v. Max Advisors, LLC, 235 F. Supp. 2d 130, 149 (N.D.N.Y. 2002) (granting summary judgment dismissing claim of bad faith and indicating that court found no case "suggesting the existence of an independent cause of action under New York law for 'bad faith'" and stating that bad faith claim was "legally unrecognizable as a matter of law"); see also Wiener v. Unumprovident Corp., 202 F. Supp. 2d 116 (S.D.N.Y. 2002) (indicating that New York law does not recognize an independent tort action for bad faith denial of insurance coverage).[5] Accordingly, Plaintiff's bad faith claim fails as a matter of law, and Count 4 should be dismissed.

### 5. Violation of NY RPAPL (Count Five)

Plaintiff has failed to allege a cause of action for a statutory violation of NY RPAPL Section 1921(4). NY RPAPL requires that the mortgagor provide a payoff statement and other post-discharge documentation "[a]fter payment of authorized principal, interest and any other amounts due thereunder or otherwise owed by law has actually been made . . ." NY RPAPL § 1921 (1). Fannie Mae had no obligation to provide post-discharge documentation until the

---

[5] Additionally, any such claim would be duplicative of Plaintiff's breach of contract claim, warranting dismissal for that additional reason. See Whiteface Real Estate Dev. and Constr., LLC v. Selective Ins. Co. of America, No. 08-cv-24 (GLS-DRH), 2009 WL 1373735 *2 (N.D.N.Y. 2009) (dismissing claim of bad faith as duplicative of breach of contract claim).

9

mortgage had been paid in full. See Mikal Realty Co. v. Carreras, 268 A.D.2d. 435 (N.Y. App. Div. 2000) (holding that mortgagor failed to satisfy mortgage by failing to include interest and late fees in amount tendered). Here, Plaintiff does not allege that Fannie Mae failed to provide the payoff statement or other post-discharge documentation after Plaintiff caused the mortgage to be paid off. Rather, Plaintiff merely alleges that Fannie Mae (and WAMU) did not provide payoff statements in the months before Plaintiff paid her loan and mortgage, and that Fannie Mae provided the payoff statement on October 24, 2004, which date was before Plaintiff sold the Property in order to satisfy her mortgage. See Compl. ¶¶ 52 - 56, 60, 63. Indeed, the NY RPAPL does not provide a basis for an independent claim based on a failure to provide a payoff statement before paying all fees and costs associated with a mortgage, and thus, Count five should be dismissed.

### 6. Violation of TILA (Count Six)

Plaintiff has failed to state a cause of action for a TILA violation. As the sole basis for Count Six, Plaintiff alleges that in 2004, she repeatedly asked Fannie Mae and WAMU to provide a payoff statement, and they did not provide such statement within a reasonable time after Plaintiff made at least one written request. See Compl. ¶¶ 52, 54, 56, 112. Plaintiff's Complaint ignores the fact that in 2004 when Plaintiff allegedly asked for a payoff statement, TILA did not require Fannie Mae to provide such a statement. It was not until, and by, amendment in July 2008, that TILA began requiring servicers to provide payoff statements and related disclosures. See 12 C.F.R. § 226.36(c)(1)(iii) (including servicing practices that provide that no servicer shall "[f]ail to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the consumer, an accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a

specified date"); see also 73 Fed. Reg. 44,522 (July 30, 2008) (to be codified at 12 C.F.R. pt. 226); 73 Fed. Reg. 44,604 (July 30, 2008) (to be codified at 12 C.F.R. pt. 226); 73 Fed. Reg. 44,614 (July 30, 2008) (to be codified at 12 C.F.R. pt. 226); 74 Fed. Reg. 23,289 (May 19, 2009) (to be codified at 12 C.F.R. pt. 226). Accordingly, Plaintiff cannot allege that in 2004, Fannie Mae violated a section of TILA that was added in 2008, and Plaintiff's TILA claim must fail as a matter of law.

### 7. Deceptive Practices (Count Seven)

Plaintiff has failed to plead facts to support an allegation that Fannie Mae engaged in deceptive acts and practices that were of a recurring nature and harmful to the public at large, as necessary to support a deceptive practices claim under New York law. See Choi v. Korea First Bank of New York, 244 A.D.2d 236 (N.Y. App. Div. 1999) (affirming motion to dismiss deceptive practices claim and holding that mortgagee's actions, in allegedly altering second mortgage to include clause subordinating it to prior mortgage, were not shown to be of recurring nature and harmful to public, as necessary to support claim). Instead, Plaintiff baldly asserts that Fannie Mae's "acts have the potential to mislead consumers in material ways," and Plaintiff fails to allege facts to show that Fannie Mae engaged in any conduct directed at persons other than her. Thus, Plaintiff has failed to state a deceptive practices claim. See Gorham-Dimaggio v. Countrywide Home Loans, Inc., 592 F. Supp. 2d 283 (N.D.N.Y. 2008) (dismissing deceptive practices claim where "the crux of Plaintiff's Complaint allege[d] that the Defendants engaged in discriminatory and retaliatory conduct specifically directed at her . . .").

### 8. Misrepresentation, Fraud and Deceit (Count Eight)

Plaintiff has failed to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) because Plaintiff does not allege the purported fraud with particularity. "Rule 9(b)'s particularity

11

requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value." In re U.S. Office Products Sec. Litig., 326 F. Supp. 2d 68, 73 (D.D.C. 2004). As such, a claimant must plead with particularity matters such as the "time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." Id.; see also Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 105 (D.D.C. 2006). "In other words, Rule 9(b) requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud." In re U.S. Office Products Sec. Litig., 326 F. Supp. 2d at 73. "Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the pleader bases his claim." Id. Where such a claim fails to meet the heightened pleading standard of Rule 9(b), it is subject to dismissal. See e.g., Kissi v. Panzer, 664 F. Supp. 2d 120 (D.D.C. 2009); Buy Back Dist. of Columbia, LLC v. Home Depot USA, Inc., 2004 WL 4012265 (D.D.C. Dec. 14, 2009).

Nowhere in her Complaint does Plaintiff allege the time, place and content of the purported misrepresentations, nor does Plaintiff identify the persons allegedly making the misrepresentations or the alleged losses arising out of the alleged fraud. Rather, Plaintiff simply sets forth conclusory allegations that Fannie Mae falsified unspecified information or documents "in the various Courts of the United States," failed to enter into a workout plan as agreed and attempted to foreclose on the Property and otherwise collect monies to satisfy the Note and mortgage. See Compl. ¶¶ 125, 127-128; see also Inn Chu Trading Co. v. Sara Lee Corp., 810 F. Supp. 501, 507 (S.D.N.Y 1992) (indicating that a fraud claim cannot succeed on conclusory

allegations alone). Additionally, Plaintiff fails to allege that she relied on any misrepresentations. These bare bones allegations do not provide sufficient specificity to comply with the pleading requirements, and therefore, Count Eight should be dismissed.

### 9. Intentional Infliction of Emotional Harm (Count Nine)

Plaintiff fails to state a cause of action for intentional infliction of emotional harm because Plaintiff merely states the elements of intentional infliction of emotional harm, without identifying the underlying facts to support that claim. Plaintiff fails to identify (i) extreme and outrageous conduct, (ii) intent to cause severe emotional distress or harm, (iii) a causal connection between the conduct and the injury alleged, (iv) severe emotional distress or harm. See Pepe v. Maklansky, 67 F. Supp. 2d 186, 187 (S.D.N.Y. 1999) (dismissing intentional infliction of emotional distress claim and discussing strict requirement that defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community") (quoting Howell v. New York Post Company, 81 N.Y.2d 115 (1993)). To be sure, the only acts alleged to have been committed by Fannie Mae do not satisfy the element of extreme and outrageous conduct required to support a claim of intentional infliction of emotional harm. As such, Count Nine falls short of meeting the strict requirements for a tort of intentional infliction of emotional harm, and should be dismissed.

### 10. Intentional Interference with Business Relations (Count Ten)

In order to state a claim of tortious interference with prospective business relations under New York law, a plaintiff must establish that (1) she had business relations with a third party, (2) the defendant interfered with those business relations, (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means, and (4) the defendant's act injured the

relations. See Berman v. Sugo LLC, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (dismissing claim of tortious interference with prospective business relations). Here, Plaintiff fails to identify the business relations and third parties to those relations, and fails to set forth any dishonest, unfair or improper conduct in which Fannie Mae engaged to injury any such relations. Moreover, Plaintiff's failure to allege termination of any business relation is fatal to Plaintiff's Count Ten. See Henrick Co. v. Vetta Sports, Inc., No. 94 Civ. 0905 (RPP), 1996 WL 434571 (S.D.N.Y. Aug. 2, 1996). As such, Count Six is conclusory, and should be dismissed.

**11.    Economic Duress (Count Eleven)**

Plaintiff's economic duress claim is based on the allegations that Fannie Mae demanded and "extracted outrageous sum[s]," which Plaintiff was "compelled to pay," resulting in "severe economic and emotional damage" to Plaintiff. See Compl. ¶¶ 145,-146, 148. In order to state a claim for economic duress under New York law, a plaintiff must establish that an agreement was obtained "(1) by means of wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative." Mazurkiewicz v. New York Health and Hospitals Corp., 585 F. Supp. 2d 491, 500 (S.D.NY. 2008) (dismissing economic duress claim and stating "[i]f the defendant's actions are within his legal rights, plaintiff can not make out a claim of economic duress and the courts will not intervene to void a contract fair on its face. Mere hard bargaining positions, if lawful, and the press of financial circumstances, not caused by the defendant, will not be deemed duress. The alleged duress must be proven to have been the result of defendant's conduct and not of the plaintiff's own necessities") (quoting Business Incentives Co. v. Sony Corp. of America, 397 F. Supp. 63, 69 (S.D.N.Y. 1975)). Plaintiff has failed to plead facts to support any such claim and Plaintiff has never sought to repudiate any contract with Fannie Mae on the basis of economic duress. Plaintiff merely complains of Fannie Mae's demand to be paid under the Note and

mortgage, and apparently disputes the amount and application of payments collected. As such, Plaintiff's allegations are insufficient to support a claim for economic distress, and thus, Count Eleven should be dismissed.

### 12. Violation of Civil RICO (Count Twelve)

Plaintiff has failed to properly allege a pattern of racketeering activity or a conspiracy, and Plaintiff's conclusory statements are unsupported by factual allegations to demonstrate the existence of a RICO enterprise. See Besicorp Ltd., v. Kahn, 290 A.D.2d 147 (N.Y. App. Div. 2002); see also Skylon Corp. v. Guilford Mills, Inc., No. 93 Civ. 5581, 1997 WL 88894 (S.D.N.Y. Mar. 3, 1997). Accordingly, Plaintiff has failed to state a RICO claim. Instead, the gravamen of Count Twelve is Plaintiff's complaints arising out of a foreclosure action that Fannie Mae commenced against her in September 2001, which was ultimately resolved in 2004 by sale of Plaintiff's Property. Accordingly, Count Twelve should be dismissed.

## IV. CONCLUSION

WHEREFORE, Fannie Mae requests that the Court dismiss Plaintiff's Complaint, with prejudice, based upon the numerous grounds set forth herein.

Respectfully submitted,

GREENBERG TRAURIG, LLP.


By:  /s/ David S. Panzer
     David S. Panzer (DC Bar No. 470677)
     Greenberg Traurig, LLP
     2101 L Street, NW, Suite 1000
     Washington, DC 20037
     Tel. (202) 331-3100
     Fax. (202) 331-3101
     E-Mail.  panzerd@gtlaw.com

/s/ Precious Murchison Gittens
Precious Murchison Gittens (D.C. Bar No. 983912)
Greenberg Traurig, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel.  202-331-3100
Fax.  202-331-3101
E-Mail.  murchisonp@gtlaw.com

*Counsel for Federal National Mortgage Association*